UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-311-GWU

JENNIFER CAPERTON,                                                    PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                        DEFENDANT.

**INTRODUCTION**

The plaintiff brought this action  to obtain judicial review of an administrative

denial of her applications for Supplemental Security Income (SSI) and Disability

Insurance Benefits (DIB).  The appeal is currently before the Court on cross-motions

for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.      Is the claimant currently engaged in substantial gainful activity?
        If yes, the claimant is not disabled.  If no, proceed to Step 2.
        See 20 C.F.R. 404.1520(b), 416.920(b).

2.      Does the claimant have any medically determinable physical
        or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
        claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.      Does the claimant have any severe impairment(s)--i.e., any
        impairment(s) significantly limiting the claimant's physical or
        mental ability to do basic work activities?  If yes, proceed to

1

Caperton

Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.     Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.     Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.     Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.     Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

2

Caperton

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.   20  C.F.R.  Section  404.1529  (1991).   However,  in  evaluating  a claimant's allegations of disabling pain:

3

Caperton

> First, we examine whether there is objective medical evidence of an
> underlying medical condition.  If there is, we then examine:  (1)
> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment.  The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations.

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.

1987).  Further, a failure to seek treatment for a period of time may be a factor to be

considered against the plaintiff, Hale v. Secretary of Health and Human Services,

816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

Caperton

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Caperton

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency

6

Caperton

may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d
279, 282 (6th Cir. 1985).   Even then, substantial evidence to support the
Commissioner's decision may be produced through reliance on this expert testimony
only if the hypothetical question given to the expert accurately portrays the plaintiff's
physical and mental impairments.   Varley  v. Secretary of Health and Human
Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) found that Caperton suffered from
fibromyalgia and high blood pressure. (Tr. 24, 29).  He believed that while the
plaintiff was restricted to a limited range of light level work, she was capable of
performing her past relevant work as a "nurse consultant inspector", as she had
performed it. (Tr. 27, 29).[1]  Thus, she was denied benefits.

The plaintiff argues primarily that the ALJ improperly discounted the opinions
expressed by her treating physician, Dr. Kevin Rowe.  Most of Rowe's progress
notes and the detailed testing in his files relate to the plaintiff's cardiac system[2], but

---

[1]The vocational expert also identified alternative jobs available. (Tr. 28).

[2]Included in these records, for example, is a copy of a June, 2002 hospitalization
record apparently faxed to Dr. Rowe which includes a diagnostic impression of
cardiomyopathy. (Tr. 214-215).  Earlier that month, Rowe had referred the patient for a
cardiac nuclear perfusion scan that had shown septal akinesis. (Tr. 312).  While these
conditions sound extremely serious to the layman, no physician of record clearly
indicated whether the conditions were verified or persisted, and what specific permanent
limitations flowed from them–although Rowe at one point made a comment that the

Caperton

the physician never appeared to link any functional restrictions to these types of conditions. Instead, Rowe's August, 2005  prescription pad note referencing "difficulty with gainful employment," "frequent change of position" and "intermittent absences" is expressly linked to the condition of fibromyalgia.  (Tr. 397).  The doctor's own progress note references to musculoskeletal findings are very limited, albeit he did occasionally generally mention  finding "fibromyalgia trigger points." (e.g., Tr. 287, 290, 298). Nevertheless, he also did refer the patient for a detailed functional capacity evaluation by the staff at the Rockcastle Hospital and Respiratory Care Center, which consisted of a four hour test of weight lifting capacity, positional tolerances,  and repetitive action tolerances.  (Tr. 389-396). Rowe apparently saw and co-signed the statement (Tr. 393, 396), something which was not acknowledged by the ALJ (Tr. 26).[3]

The functional capacity evaluation is significant since it expressly required the plaintiff to alternate positions every thirty minutes (Tr. 394-5), among other limitations.  The VE's testimony appears to indicate that this type of restriction would prevent a return to her past job, since sitting while driving and using the computer

plaintiff could not be confined "in prison" while she was being evaluated for heart arrhythmia (Tr. 304).

[3]Additionally, the medical reviewer was unaware of the treating physician's statement and did not express an opinion on the same. (Tr. 377).  See Barker v. Shalala,40 F.3d 789, 794 (6th Cir. 1994).

8

Caperton

was involved. (Tr. 497). This, then, casts significant doubt on whether the plaintiff could return to her past work.

Finally, it is unclear that at least one of the lifting limitations demonstrated (i.e., lifting from the waist to eye), and some of the other restrictions on stair climbing, balancing and crawling (Tr. 409, 410) are consistent with the factors considered by the VE in identifying alternative jobs (Tr. 493).

Thus, the case must be remanded for further consideration.

This the 28th day of February, 2007.

**Signed By:**

_**G. Wix Unthank**_

**United States Senior Judge**

9